**SACK & SACK, ESQS.**
Jonathan S. Sack, Esq. (JSS 1835)
Eric R. Stern, Esq. (ERS 1918)
135 East 57th Street, 12th Floor
New York, New York 10022
Tel.: (212) 702-9000
Fax: (212) 702-9702

**05 CV 3935**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

**JESUS LEGASPI,**

Index No. 

ECF CASE

Plaintiff,

— against —

**COMPLAINT**

**KANEMATSU USA, INC.,**

**JURY TRIAL REQUESTED**

Defendant.

------------------------------------------------------------------- x

Plaintiff, JESUS LEGASPI ("*Legaspi*" or "*Plaintiff*") by his attorneys, Sack & Sack, Esqs., as and for its complaint, alleges as follows:

### NATURE OF ACTION

1. Plaintiff complains that his former employer, Defendant Kanematsu USA, Inc. ("*Defendant*" or "*Kanematsu*") engaged in the unlawful discrimination of Plaintiff in the terms, conditions, and privileges of his employment pursuant to the federal Age Discrimination in Employment Act ("*ADEA*"), as amended by the Older Worker Benefit Protection Act ("*OWBPA*"), 29 U.S.C. § 600, et seq., because he is over the age of 40.

2. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, based upon his national origin, Filipino.

3. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of New York State New York State Human Rights Law, Executive Law § 290 et seq. ("*NYSHRL*") and the Administrative Code of the City of New York § 8-101 et seq. ("*NYCHRL*") based upon his age (over 40).

4. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of NYSHRL and NYCHRL based upon his national origin, Filipino

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Plaintiff served copies of this Complaint upon the New York City Commission on

2. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, based upon his national origin, Filipino.

3. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of New York State New York State Human Rights Law, Executive Law § 290 et seq. ("*NYSHRL*") and the Administrative Code of the City of New York § 8-101 et seq. ("*NYCHRL*") based upon his age (over 40).

4. Plaintiff further complains that Defendant engaged in the unlawful discrimination and retaliation of Plaintiff in the terms, conditions, and privileges of his employment in violation of NYSHRL and NYCHRL based upon his national origin, Filipino

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Plaintiff served copies of this Complaint upon the New York City Commission on

Human Rights and the New York City Corporation Counsel prior to filing it in the United States District Court.

## PARTIES

9. Plaintiff is a Filipino male citizen of the United States and is a resident of the State and City of New York, County of Richmond, and at all times relevant hereto, has resided and currently is residing at 375 Lyndale Avenue, Staten Island, New York 10312.

10. From October 1, 1974 through his termination on March 31, 2004, Plaintiff was employed by Defendant Kanematsu.

11. At all times relevant herein, Plaintiff was an employee within the meaning of the ADEA (29 U.S.C. § 621), 42 U.S.C.A. §§ 2000e, *et seq.*, § 296 of the NYSHRL and under § 8-102(1) of the NYCHRL and thus, afforded protection against discrimination in employment on the basis of his national origin and age and was a member of the protected group of workers 40 years of age or older.

12. At all times relevant herein, Defendant Kanematsu is a corporation licensed to do business in the State of New York, with executive offices located at 114 West 47th Street, 23rd Floor, New York, New York 10036.

13. Defendant Kanematsu is a wholly-owned subsidiary of the Kanematsu Corporation, one of the oldest trading companies in the United States, founded in 1889 in Japan. Defendant Kanematsu works to help American companies attain higher levels of success in the global market place by exporting their goods and commodities throughout the world and helping them to locate high-quality suppliers in order to enhance their competitive position. Defendant Kanematsu also imports products from Japan and other countries to the United States. Among its products are IT related products,

electronics, chemicals, pharmaceuticals, textiles, specialty steels, grains, foodstuffs and aerospace.

14. Defendant Kanematsu established its New York offices in 1936 under the name "Kanematsu."

15. In 1967, "Kanematsu" joined a company called "Gosho" to become "Kanematsu-Gosho USA, Inc."

16. In 1991 "Kanematsu-Gosho (USA) Inc." became "Kanematsu USA Inc.".

17. At the time of Plaintiff's termination, Defendant Kanematsu employed over five hundred employees.

18. At all times relevant hereto, Defendant Kanematsu is an employer within the meaning of the ADEA (29 U.S.C. § 621), 42 U.S.C.A. § 2000e-(b), § 292 of the NYSHRL and under § 8-102(5) of the NYCHRL and as such was prohibited from discriminating in employment on the basis of age and national origin.

19. Japanese companies operating in the United States, such as Defendant Kanematsu, must comply with the federal, state, and local laws prohibiting employers from discriminating against employees in hiring, promotion, compensation, discharge, and other terms and conditions of employment, based on factors including, but not limited to, the employee's age and national origin.

## FACTS

The claims set forth herein arise from the following set of facts:[1]

20. The Plaintiff in this action has undergone disparate, humiliating and degrading treatment by Defendant and its representative management, who treated Plaintiff like a second class citizen because he was 40 and of Filipino (and not Japanese) national origin.

### HIRING OF PLAINTIFF

21. Plaintiff was born on July 30, 1948 and, as of the date of this Complaint, is 55 years of age.

22. In 1969, Plaintiff received a Bachelor of Science in Chemical Engineering from Mapua Institute of Technology in Manila, Philippines.

23. Plaintiff married his current wife, Florideliza, on October 7, 1972.

24. In July 1974, Plaintiff joined the American Institute of Chemical Engineers

25. Prior to his employment with Defendant (from November, 1973 through October, 1974), Plaintiff worked as a Merchandise Adjustor/Investigator for B. Altman & Co. on Fifth Avenue in New York City.

26. On or about October 1, 1974, at the age of 26, Plaintiff was hired by Defendant Kanematsu as a Sales Assistant specializing in chemical and pharmaceutical products at a pay rate of $170 per week.

---

1. All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

## PLAINTIFF'S HARD WORK AND DEDICATION EARNED HIM CONSTANT PROMOTION

27. Beginning from October 1, 1974, the date Plaintiff commenced his employment with Defendant Kanematsu, through the effective date of his termination on March 31, 2004, Plaintiff's work performance was considered exemplary and Plaintiff was regarded as the top-performing and one of the most valued employees at Defendant Kanematsu's New York office.

28. Plaintiff was consistently promoted within Defendant Kanematsu.

29. On or about January 1, 1980, the then-President of Defendant Kanematsu, Hideo Suzuki, promoted Plaintiff to Supervisor (the "*1980 Promotion Notice*"). The 1980 Promotion Notice is annexed as part of Exhibit "A".

30. On or about January 1, 1982, the then-Senior Vice President of Defendant Kanematsu, T. Ueda, promoted Plaintiff to Assistant Manager (the "*1982 Promotion Notice*"). The 1982 Promotion Notice is annexed as part of Exhibit "A".

31. On or about January 1, 1993, the then- President of Defendant Kanematsu, M. Inoue, promoted Plaintiff to Associate Manager (the "*1993 Promotion Notice*"). The 1993 Promotion Notice is annexed as part of Exhibit "A".

32. A memo dated December 1993 from H. Kajiwara (Manager of Personnel Department of Defendant Kanematsu in New York) to Plaintiff (which memo is attached hereto as part of Exhibit "A") specifies that Plaintiff is the Manager of the Chemical operation of Defendant Kanematsu.

## PLAINTIFF'S HARD WORK AND DEDICATION EARNED HIM STELLAR REVIEWS

33. Plaintiff's management skills and accomplishments earned him excellent reviews in respect of each year of his twenty-nine (29) year employment with Defendant Kanematsu.

34. In respect of each year of Plaintiff's employment with Defendant Kanematsu up until calendar year 2000, Plaintiff's performance was reviewed by the acting Manager of his department.

35. From calendar year 2000 through Plaintiff's termination on March 31, 2004, Plaintiff's performance was reviewed by the acting President of Defendant Kanematsu.

36. In December, 1994, Plaintiff received a Service Award from Defendant Kanematsu (signed by its Executive Vice President) in recognition of Superior Services for services rendered by Plaintiff on behalf of Defendant Kanematsu for the past twenty (20) years (see Service Award as part of Exhibit "A").

37. In December, 1999, Plaintiff received a Service Award from Defendant Kanematsu (signed by its Senior Vice President) in recognition of Superior Services for services rendered for the past twenty-five (25) years (see Service Award as part of Exhibit "A").

38. From calendar year 2001 through Plaintiff's termination on March 31, 2004, Plaintiff's performance was reviewed by the acting President of Defendant Kanematsu.

39. Plaintiff was known throughout the company to have the exceptional ability to be able to encourage his staff to work hard and produce profit on behalf of Defendant Kanematsu.

40. On a regular basis, Plaintiff's supervisors knew that Plaintiff would **"step up to the plate"** and pull his staff together to keep productivity and profit high.

41. Plaintiff's supervisors and staff would often come to Plaintiff and ask him questions, saying, **"Jesse knows everything about Kanematsu! If you have a question, you go to Jesse!"**

7

42. The President of Defendant Kanematsu would often call Plaintiff personally to tell him **"Your numbers are great! Keep up the excellent work!"**

43. Throughout Plaintiff's employment, Defendant Kanematsu's President as well as Plaintiff's other supervisors continually complimented Plaintiff on the quality and professionalism in which Plaintiff carried out his duties as well as the quantity of business he generated for the benefit of Defendant Kanematsu.

44. Plaintiff's profit and loss were always positive, which was especially impressive because his salary was included as a loss in the calculation.

45. Plaintiff was often told by his supervisors and peers, **"You are a strong contributor to our company!"**

46. Plaintiff was regularly told that he was **"doing a great job"** and was **"always there to hold up the fort."**

47. Plaintiff was not only trusted and revered by his subordinates, but by his superiors as well.

48. Plaintiff's reputation in the Kanematsu organization as a hardworking, dedicated and persistent team player often brought him unsolicited offers from competitors of Defendant Kanematsu. Nevertheless, Plaintiff continued to remain a staunch supporter of Defendant Kanematsu in the hopes his advancement in the company would continue as it had for the previous twenty-five plus (25+) years and that despite his nationality and his age, Plaintiff would continue to rise in the ranks at Defendant Kanematsu.

49.  For example, in respect of his twenty-fourth (24th) year with Defendant Kanematsu (*i.e.*, calendar year 1998), Plaintiff received impeccable accolades in his written performance reviews, a copy of which is attached hereto as part of Exhibit "B" (the "*1998 Review*").[2] It is important to note that the 1998 Review provides an improved result compared with review of 1997, evincing Plaintiff's constant and significant growth within Defendant Kanematsu as a direct result of his experience and tenure.

50.  The following is a brief synopsis of the categories and the actual reviews received by Plaintiff in his 1998 Review:

| GOAL SETTING / CATEGORY | RESULTS ACHIEVED / MANAGER COMMENTS |
|---|---|
| • *Establish new business such as sales of Kuraray's Septon, Yashuhara's Resin, Callaway's MayoQuest.*<br>• *Enlarge sales of Witco's sulforates to Japan especially for Nippon Oil.* | • Substantially exceeded standard<br>• Developed new domestic business<br>• Developed new profitable business |
| • *Establish new business with Witco such as promoting their other lines of additives for metal working fluid.* | • Exceeded standard<br>• Increased Witco's business |
| • Better understanding with all of our suppliers, users and distributors by visiting them constantly. | • Exceeded standard<br>• Kept good relationship with suppliers and customers. |
| • Initiates Action | • Excellent |
| • Strives for Excellence | • Excellent |
| • Focuses on Customer needs | • Excellent |
| • Seeks Information | • Substantially exceeded standard |
| • Thinks Strategically | • Fully meets standard |
| • Demonstrates Creative Tactics | • Fully meets standard |
| • Acts Confidently | • Excellent |

---

2 1998's "Performance evaluation.

9

| | |
|---|---|
| • Directs Others | • Excellent |
| • Develops Others | • Fully meets standard |
| • Empowers Others | • Fully meets standard |
| • Performance Goals | • Achieve over 100% of goals<br>• Succeeded in selling Kuraray's Septon and Yashuhara's Resin.<br>• Sales volume of Witco's Products increased. |
| • Business Results | • Achieved over 100% of sales target |
| • *Performance Factors* | • Continuous visits to suppliers, customers and distributors<br>• Contributes a lot in achieving goals. |

51. In or about August 2002, Plaintiff received a hand written note from Mr. Shimojima, the President of Defendant Kanematsu, a copy of which is attached hereto as part of Exhibit "C," and which reads in part as follows:

**Legaspi,**

**Thank you for your efforts to expand [Kanematsu's] chemical business.**

**Shimojima**

52. It was obvious to Plaintiff that even after twenty-five plus (25+) years of service to Defendant Kanematsu, Plaintiff continued to be an experienced, valued and integral employee to the business and operations of Defendant Kanematsu.

53. Plaintiff's performance, goals, achievements and business results improved with his age and experience and Plaintiff continued to be an integral part of the Kanematsu organization.

54. Through the actions and words of his superiors, as well as his subordinates, Plaintiff reasonably believed he had a job for life with Defendant Kanematsu.

**PLAINTIFF'S HARD WORK AND DEDICATION EARNED HIM CONTINUOUS COMPENSATION INCREASES**

55. From the date of his hire on or about October 1, 1974 through the effective date of his termination, March 31, 2004, Plaintiff's salary was steadily increased as a result of the previous discussed exemplary work performance Plaintiff exhibited throughout his long tenure with Defendant Kanematsu.

56. In addition to Plaintiff's annual salary increases, Plaintiff consistently received performance bonuses in respect of each year of his thirty (30) year tenure at Defendant Kanematsu.

57. In respect of the last seven (7) years Plaintiff was employed by Defendant Kanematsu, he received the following incentive bonuses as a direct result of positive performance reviews: